SUSAN GILMORE, Wife of C. Hubbs, *v* J. A. GILMORE et al.

The petition concluded with the prayer, that the defendant and her husband be cited to answer the petition—it was served on the husband in person, and a judgment by default rendered against both. *Held:* The suit was brought in the manner required by Article 118 C. P. Service of process was made as directed by Article 182 C. P. The feigned or tacit issue resulting from a judgment by default, was binding on the wife and dispensed with the authorization of the Judge, which is only necessary in the absence of an authorization, express or implied, of the husband. C. P. 118. C. C. 126, 129. *Buchanan,* J., *Voorhies,* J., *Ogden,* J., and *Slidell,* C. J., concurring.

The husband having failed to appear to assist his wife, in the defence of her suit, it was necessary that the plaintiff should have obtained from the court an order authorizing her to stand in judgment. *Campbell,* J., dissenting.

In proceedings for partition, experts were appointed, who reported that the property could not be conveniently divided in kind, whereupon the court ordered a sale at public auction. The husband, who represented his wife in the partition, assisted in fixing the terms of sale, and also at the sale itself. The proceedings were held to be regular, and the conduct of the husband regarded as an execution of the judgment on behalf of the wife, under Art. 612 C. P.

The judgment of the court ordering a partition, did not direct in what manner the partition was to be made, nor did it appoint a notary to make the same. *Held:* The irregularities in the form of the judgment of partition of the nature of those charged, are the subject of appeal, rather than of the action of nullity. *Buchanan*, J, *Ogden*, J., *Voorhies*, and *Campbell*, J., concurring. *Slidell*, C. J., dissenting.

The absolute p·ohibition to sell under the price of estimation only exists in the case of minors

APPEAL from the District Court of the Parish of East Baton Rouge, *Robertson*, J.

*Lacey*, *Davidson* and *McHatton*, for plaintiff:

First.—The first point, upon which the plaintiffs rely, to sustain the illegality of the proceedings is, that the husband, *Charles Hubbs*, not having appeared in the suit for partition, an order of court, authorizing his wife to appear was necessary before she acquired the right to stand in judgment; and that any decree of judgment rendered against her, until she obtained the authority "*legitiman standi in judicio personam*," was illegal and void.

The necessity of an order, where the husband fails to make an appearance, authorizing the wife to defend the suit, was fully declared in *Adley* v. *Anty*, 1st Ann. 260; and in that case, it was laid down as a rule, after a full investigation of the question by the court, that where a husband fails to appear and assist his wife by his actual presence, such wife cannot prosecute, if she be plaintiff, nor defend if she be defendant, until the court has authorized her to do so. *Anty* and his wife were both defaulted; the latter afterwards appeared and filed her answer; a judgment was rendered against her in the lower court; and yet the Supreme Court reversed the judgment and remanded the cause, because Mrs. *Anty* was not authorized to appear and defend. The opinion of the Supreme Court is not technical in its nature, as the District Judge seemed to think, nor was it made up simply to suit the facts in *Adle* v. *Anty*; it was well considered; was intended to establish, or rather to confirm, an old established rule; and is in strict conformity to a long line of admitted authorities. Vide authorities referred to by Mrs. *Anty's* counsel in 1 Ann. 260. *Chaisson* v. *Duplantier*, 10 L. R. 570. *Keys* and others v. *Nettles*, 12 L. R. 381.

If the "ends of justice" called upon the Supreme Court to remand *Adle* v. *Anty*, do they not much lounder call upon it to grant the demand of Mrs. *Hubbs*, to be heard relative to the partition?

We have already shown your honors, that Mrs. *Hubbs* could not appear and answer the petition for partition, until she had been authorized by the court, and the necessary, self-evident, and irresistible conclusion is, that a judgment by default, made final against her, when she was without the right, *legitiman standi in judicio personam*, is illegal and void.

Second.—The proceedings in partition, and the probate sale, are illegal, because the judgment rendered by the court, did not direct in what manner the partition was to be made, whether in kind, or by licitation, nor appoint a notary to make the same.

The judgment was rendered, Nov. 8, 1852, and upon reference to the same, the court will, at once, perceive that notwithstanding the plaintiffs in partition pretended to have defaulted *Susan Hubbs*, they, nevertheless, in the final judgment, rendered on that day, obtained a decree covering no other ground than the appointment of appraisers. No partition was decreed; the manner of the partition was not fixed; and the notary was not mentioned, except for the purpose of making an inventory and appraisement. Is not the judgment, in the absence of a provision, directing the manner in which the partition should be made, and in not naming the notary to carry out the order of the court, illegal and void? Most unquestionably it is. The Supreme Court of the State, in referring to a partition, not quite so careless and reckless in its compliance with the requirements of law, as the one under consideration, uses the following strong and judicious language: "The judgment not directing in what manner the partition is to be made, whether in kind or by licitation, and no notary being appointed to make the same, no further proceedings can legally take place thereon; either party aggrieved by it may appeal; or be relieved by an appeal from the judgment homologating the partition, to be afterwards rendered. *McCullum* v. *Palmer*, 1 Rob. 513.

The force of this position cannot be denied, and so strong is it, that the defendants may attempt to evade its strength, and to relieve themselves from

the difficulty into which it places them, by falling back upon another judgment, which they pretend has been rendered in the matter. I refer to the decree granted by the Judge at Chambers, upon the *ex parte* application of the plaintiffs in partition, bearing date December 6, 1852.

This judgment, or rather order, can be of no avail to the defendants, for two good, substantial and legal reasons: first, because it was not preceded by a "citation," and, secondly, it was not rendered "in open court." It will not be pretended that *Susan Gilmore* had any notice of the application made to the Judge for the sale of the common property, except through the service of the original citation; and as such original citation ceased to have any effect, as soon as the judgment of November 8, 1852, was entered up; and as Mrs. *Hubbs* was bound to know knothing after the judgment aforesaid, without another notice, we may safely assert that the pretended decree of December 6, 1852, was unaccompanied by a citation. In the absence of such citation, was not the order of sale of December 6, 1852, and upon which the defendants rely, *ex parte* and illegal? Vide Civil Code, 1252, for an answer. Should we, however, for the sake of argument admit, that *Susan Gilmore* was, through the original citation, legally cited in, as a party to the proceedings and decree of December 6, 1852, (an admission which the court will scarcely receive even in the way of argument,) yet we contend that such decree is illegal and of no avail, because "not rendered in open court."

Article 1252 Civil Code, provides, that the co-heirs or their representatives be cited in order that the form of the partition may be determined; and the preceding Article (1251) makes it the duty of the Judge, before whom the action of partition is brought to pronounce thereon, "in preference to the ordinary suits pending before him;" and as there is no such thing as citing a party to appear before the Judge, out of court, and no ordinary suits can be pending before him, at Chambers, the conclusion is apparent, that the citation must be returnable in open court, and the judgment, ordering a sale, must be there rendered. The word "cited" in Article 1252, and the words, "in preference to the ordinary suits pending before him" in 1251, would be reduced to an absolute absurdity, if the Judge, before whom the action of partition is brought could determine the form of making the same at Chambers.

Again: Article 1022, Code of Practice, provides, "that all partitions of succession property shall be made by the Court of Probates," not by the Probate Judge. There is a well marked distinction laid down in the article of the Code of Practice, which throws all partitions into the court, and not before the Judge; and this distinction, which is in perfect harmony with the provisions of the Civil Code, as already shown, it is the duty of the judiciary to maintain.

It has been intimated that had no proceedings been had in open court, relative to the partition, the defendants would not, under such circumstances, have regarded the judgment rendered at Chambers, as possessing any validity; but that inasmuch as a petition disclosing all the facts relative to the contemplated partition, had been served upon Mrs. *Hubbs*, and inasmuch as she failed to make answer to such petition, and suffered an informal judgment to be rendered, the heirs were entitled to correct such informal and imperfect judgment (of November 8, 1852) by the *ex parte* proceedings of the 6th of December. The error of this position is clearly illustrated by referring to an analogous case. Suppose that the heirs of *Gilmore* had instituted proceedings against Mrs. *Hubbs*, upon two notes of hand, $500 each; that the petition had been served upon her, and that failing to answer, she had been regularly defaulted; that the plaintiffs had proceeded to make such default final, and instead of taking a judgment upon two notes, as they had the right to do, they through error, or some other unknown cause, obtained a decree for only five hundred dollars, the amount of one note, could they apply to the court, at chambers, and correct their errors, and perfect their imperfections, by obtaining an *ex parte* decree, for an additional sum of $500? Most unquestionably they could not. How then can a similar proceeding be maintained, relative to a suit for partition? The principle is the same in both cases, and if the imperfect judgment for the money cannot be corrected by an order at chambers, how can an informal decree of partition be made perfect, by such informal proceedings? To permit it, would be to sanction a marked difference, where there is no good reason, either at law or in equity, for the slightest distinction.

It may not be amiss to notice the view, which we are led to believe, may be taken relative to the Act of 1850, giving to the clerk, as the defendants main-

tain, the legal right to render judgments in partition. The wording of the statute of 1850, is very loose and general in its nature, and it is a matter of extreme doubt, whether under the grant conveyed by the words "shall order sales of succession property," a right to fix the mode and manner of partition and everything relating to such partition be granted to the clerk. Be that, however, as it may, it is clear that the clerk of the court is one thing, and the Judge another, and if judgments in partition can be rendered out of open court, they can be rendered only by the person, fixed by the Act of 1850, and in the manner, and upon the days, therein allowed. This statute gives no right to the Judge at Chambers to grant such judgment, and the defendant's case is as good in the absence of the law of 1850 as with it. It is wholly inapplicable, and without the least bearing upon the point in controversy. The same remarks may be applied to the Act of 1853, with the additional remarks, that as such act was passed subsequent to the partition sale complained of by us, it cannot be noticed by the court. If the proceedings were illegal up to the passage of the Act of 1853, they have not acquired legal form and validity, by its adoption.

We then respectfully submit to your honors, that neither the Act of 1850, nor the statute of 1853, can be considered as having any bearing upon the point under consideration, and that the judgment of December 6, 1852, derives not the slightest assistance from those acts; that such judgment is illegal, both on account of not having been preceded by a citation, and because it was not rendered in open court; that your honors will consequently overlook that judgment, and will not permit it to enter into your consideration, in deciding upon the validity of the proceedings for partition; that you will alone look to the judgment rendered in open court, November 8th, 1852, and that your honors must declare the same illegal and void, and annul the proceedings in partition thereon, because it does not direct in what manner the partition should be made, whether in kind or by licitation, and fails to appoint a notary to make the same.

THIRD.—The sale to effect a partition is illegal, because the property was adjudicated at less than its appraised value.

The whole amount of the appraisement of the plantation and slaves was $34,413, and the amount of the sales $28,562, showing that the property and slaves were adjudicated at $5,851 less than the estimation. It is true that some of the slaves sold for more than their appraised value, but on the other hand, there were others who were adjudicated for less; for instance:

To *John A. Gilmore*—*Maria* and *Nat*, appraised at $1,250, and sold for $1,000; *Lemon*, and *Maria*, his wife, appraised at $150, sold for $112; and *John*, and *Hester* and children, appraised at $2,950, sold at $2,550.

To *Andrew C. Finly*—*Ren* alias *Bill*, and his wife and children, appraised at $2,350, sold for $2,270.

The foregoing figures establish the fact, that the property and slaves sold to affect a partition, or at least a portion of such slaves and the real estate, were disposed of at a price less than the appraised value, and such being the case, we contend, that the sale is for that reason illegal.

In illustrating this position, we shall endeavor to satisfy your honors, that where succession property is sold for the sole purpose of effecting a partition among the heirs, it cannot be adjudicated at less than its appraised value. We are aware of the fact, that your honorable court has decided that the sale of property belonging to an estate, "for the payment of debts," is not subject to the rules and regulations that might otherwise apply, but this principle cannot be invoked in the present instance, because the record contains no evidence of debts existing against *Gilmore's* estate; and to effect a partition, and not for the payment of debts, were the proceedings now complained of by us instituted. That the property of *Gilmore's* estate, sold as it was, simply for the purpose of a partition, could not be legally adjudicated at less than the appraisement, is evident, because:

Such was the intention of the Legislature, in adopting Articles 1247 and 1248 Civil Code.

These articles require that an appraisement should be made in all cases—not alone in those cases in which minors are interested, but in all cases—in "every" judicial partition; and furthermore provide, that if the public inventory, was made at a time exceeding one year, it shall not serve as the basis of the partition, but a new appraisement must be made.

The Legislature, in the Articles of the Code now under consideration, could not have intended that property sold to effect a partition, could be disposed of at less than its estimated worth. Why require an appraisement, if such appraisement is to be disregarded? Why, under certain circumstances, encounter the delay and increased expense of a new appraisement, if such new appraisement, when made, is to become no better than a blank sheet of paper? What object, what meaning, do Articles 1247 and 1248 acquire or retain, under this view of the case? On the other hand, was it not clearly the intention of the Legislature, in adopting Articles 1247 and 1248 C. C., thereby to declare, that property offered for sale, for the purpose of effecting a partition, could not be adjudicated at less than the ascertained value of such property? Did it not thereby endeavor to prevent such property from being sacrificed by a sale, at less than its estimation, at least until the fact is brought to the attention of the court, for its review and decision in the premises? Is not such object a fair and reasonable deduction from the articles under construction! We think we may safely assert, that it was the intention of the Legislature, that property sold to effect a partition, should bring the amount of its appraisement, and the lands and slaves in the *Gilmore* succession, having been adjudicated, at less than their appraised value, the sale is, for that reason in addition to others, illegal and void.

Fourth.—The proceedings to effect the sale, and the sale itself, having been shown to be irregular and illegal, and not in accordance with the formalities of law in such cases made and provided, we proceed to establish, as a consequence of such informalities, that the title of the defendants is illegal, null and void.

The court is not invested with the power of inquiring whether the plaintiff may have been benefited or injured, by the sale; she is entitled to the ownership and possession of her property, until she be divested of the same by her own consent, or by a strict compliance, in cases of forced alienations, with all the formalities of law appertaining to forced sales.

The sale of minors property, or that of a succession where the heirs are absent, must pursue the forms of law directed for its alienation, or the sale must be annulled. The conveyance derives its force and validity entirely from the law, and where that law is not followed, the authority, which stands in place of the owners consent, is wanting. *Elliott* v. *Labarre*, 2 La. 328. *Pepkin* v. *Thompson*, 14 La. 272.

One claiming title under a forced sale of property must show that all the formalities have been complied with, otherwise the sale will be null. 8 N. S. 246. *Delogny* v. *Smith*, 3 L. R. 421. *Morris* v. *Crocker*, 3 L. R. 150. *Spiller* v. *Branegard*, 4 L. R. 207. *McDonogh* v. *Gravier*, 9 L. R. 542.

We are not ignorant that the authorities above referred to, have reference more particularly to Sheriffs and tax sales; but the principle upon which they were settled, is as fully applicable to partition sales, as to any other, while in *Robinet* v. *Compton*, 2d Ann. 847, it is laid down as a general rule, under all forced alienations of property, under the authority of a judicial proceeding, that the delays and formalities required by law, must be strictly fulfilled, under pain of nullity.

*J. Joor*, for defendants:

1st. Defects in judicial proceedings such as judgment by default, can be cured only by appeal. C. P. 565. 9 L. R. 79. 10 L. R. 573.

2d. It has been repeatedly decided by the Supreme Court, that a party who has, by his own negligence and *laches*, suffered a judgment to be rendered against him, cannot be allowed to sustain an action of nullity. In the suit for partition, *Susan Gilmore* had every opportunity of defending her rights in that matter, but by her own fault made no showing whatever; and the court will not allow her to obtain that which she could have asked for, by using the merest ordinary diligence in the suit for partition. 1 R. R. 523. 3 Ann. 646.

3d. The defendants purchased the property in contest, sold under a decree of the District Court, and such purchasers are not affected by any informalities in the rendition of the decree. Even if the decree should be set aside, the sale under it must remain good: and the purchaser is not bound to look beyond the decree. 8 L. R. 412–424. 5 Ann. 437. 10 R. R. 396.

4th. Plaintiff complains that property did not bring its appraisement. It is proved by the testimony of *Babin*, that the property sold for its fair value;

and upon comparing the sale with the appraisement, it will be seen that the sale of the negroes amounted to their appraisement, although some few of them went under their appraised value and others exceeded the same. It is, however, immaterial whether the property brought its value or not. Since there were no minors interested, and the sale was made at the suit of heirs to effect a partition. The law requiring property to bring its appraisement, has reference only to cases where minors alone are interested. The law is favorable to the partition of property, and requires no one to remain joint owner with another. The law grants the right to co-partners, at any time to force a division, and for this purpose courts will grant every facility in their power. C. C. 339; 2847, sec. 5; 2855, 2861, 1230 to 1244. 11 R. R. 508. 2 Ann. 966.

5th. Plaintiff urges that she was a married woman, and for that reason, no judgment by default could be binding on her, without a previous order of court, authorizing her to stand in judgment. The citation is an order of court, and it would be a very singular course of procedure for a court of justice to authorize a party to obey its mandate! C. P. 179, sec. 4. The citation served upon the husband is a service upon the wife. C. P. 182. It is true that in one solitary instance this court decided that the wife could not answer without the authorization of her husband or the court. But the case was very different from that now before the court. This action for partition was not an action to render her liable for debt, but simply to cause a separation of interest which had been previously held in common. Throughout the whole of our legislative enactments and jurisprudence, very special care is taken to protect the rights of married women and minors. These two classes of persons have always attracted the special attention of our courts and legislatures; and if greater watchfulness has been manifested for the one than the other, it is in favor of the minor, throwing around him the shield of the court, the tutor, the under-tutor and the family meeting. Yet with this quadrupled vigilence to protect the interests of the minor, his tutor, in answering a suit for partition, needs not the authorization of Judge, under-tutor or family meeting. C. C. 1237, Act 1826, p. 172, sec. 12. If the tutor should fail to answer, could not a default be entered against him, binding the minor? It is presumed this position cannot be controverted.

If then the rights of the minor (which are so strongly guarded by the law) can be affected by the action of his guardian, what principle of law will exempt the wife from similar liability? Is she not personally more competent than the minor to attend to her own interests? Why then should she be awarded an exemption which the law expressly denies to the minor?

The correct interpretation of the law appears to be, that a wife cannot be a party plaintiff without the authorization of her husband or the court; but she may be a party defendant by citing her husband with her especially in matters relating to partition. C. C. 1249. As plaintiff she acts without any direction from the court; but as defendant she acts under the orders of the court.

6th. Plaintiff complains that the whole proceedings were not conducted in open court. Up to the appointment of experts matters are not liable to this objection. But in regard to what was done after that time, no opposition could have been made, for nothing was done which was liable to opposition, and matters were concluded by the court under as full proof as could have been made in open court.

But the law does not contemplate that the same strictness should be observed in matters of partition, as in ordinary action; for it only requires that parties in interest should have notice of the proceedings, and there is no indication of the manner in which this notice is to be given. Notice to *Susan's* husband would certainly be good as to her, and it is in evidence that he was fully aware of all the proceedings.

C. C. 1258–59–61. C. P. 1027.

As to jurisdiction of court. Dig. 1852, p. 339, s. 34.

7th. But even if the court rendered the decree of partition improperly, the plaintiff is too late in seeking redress. A party residing in the parish, who suffers a decree to be rendered against him, without opposition, and allows that decree to be executed upon his property, cannot avail himself of the action of nullity, although he had not been qualified to appear in the suit, where judgment was rendered against him. C P. 612. 2 L. R. 265. 13 L. R. 431, 512.

8th. The plaintiff cannot have the probate sale rescinded, unless the whole pro-

perty can be placed in the position it was prior to the sale. But by joining in the sale of the land to *John D. Baker*, she has put it out of the power of herself or the court to do this. 2 R. R. 20. C. C. 1786.

The probate sale is a contract in its nature requiring the consent, either judicial or otherwise of parties, and is susceptible of ratification, in the same manner as any other contract. This ratification may be effected either expressly or tacitly. This has been done in this case, by the act of the plaintiff in signing the deed of sale (with her husband) to *Baker*. The probate sale is one single contract and the ratification of a part thereof, precludes her from all rights of nullity which she might otherwise have had. C. C. 1789, 2252. 6 L. R. 536. 2 R. R. 20. 5 R. R. 254. 2 Ann. 375, 912. 4 Ann. 148.

*J. W. Seymour*, for the purchasers:

Innocent purchasers at a sale made under the authority of a court of justice, will be protected, even though it may subsequently appear that the proceedings were informal. We are taught to respect the decrees of our courts. We are taught that they are the guardians of our rights. Must a party who is not learned in the law, go behind the decree of the Judge? We think not. A *prima facie* judgment is all that he need ask for. 8 L. R. 424. Ann. 437. 1 R. R. 378.

This is an action for nullity. It is a suit to set aside a judicial decree and a judicial sale. The Code of Practice prescribes the causes for which actions of nullity will lie. Is such a case as this included among them? C. P. 606 *et seq.* On the contrary it is expressly excluded.

It is said that a judgment rendered against a party without having been cited, or against a defendant not competent to appear, may be set aside, unless the party were present in the parish, and suffered the judgment to be executed. C. P. 612.

This point is so conclusive as to need no comment.

Defects in judgments, such as want of appearance or default, can only be remedied by appeal and not by action of nullity. 9 L. R. 79.

The action to annul a judgment must be confined to the parties to that judgment. 12 L. R. 394. 9 R. R. 191.

BUCHANAN, J. This is a suit to annul a judgment of partition and a sale made under the same; also for a partition of the property thus sold, between the plaintiff and her brother and sisters, the defendants, as joint heirs of their father and mother.

The action of nullity has three grounds, as stated in the argument of plaintiff in this court:

1st. That in the suit in which the judgment was rendered, that is sought to be annulled, there was no order of court authorizing the present plaintiff, defendant in that suit, a married woman, to appear and defend the action.

2d. The proceedings in partition, and the probate sale, are illegal, because the judgment rendered by the court did not direct in what manner the partition was to be made, nor appoint a notary to make the same.

3d. The property was adjudicated at less than its appraised value in the inventory.

I. The petition in the suit of *John A. Gilmore and others* v. *Susan Gilmore*, wife of *Charles Hubbs*, states that the petitioners, four in number, and the defendant, their sister, were the children and sole heirs of *John Gilmore*, deceased, in 1834; that all the parties were of full age, and that the petitioners required a judicial partition of the estate of their ancestor, the defendant having refused to give her consent to an amicable partition. The petition (filed in October, 1852) concludes, "that the said *Susan Gilmore*, and her husband, *Charles Hubbs* be cited to answer this petition, and for general relief." A citation was issued by the clerk in that form, which was served upon *Charles*

*Hubbs* in person, and judgment by default entered against him and his wife, they failing to appear and answer.

This case differs from that of *Adle* v. *Anty and husband*, 1st Ann. 260, relied upon by the plaintiff, inasmuch as the judgment by default against the husband and wife, in the case of *John A. Gilmore* v. *Susan Gilmore*, wife of *Hubbs*, was never set aside by the filing of an answer; neither Mrs. *Hubbs* nor her husband made any appearance. Whereas in the case of *Adle* v. *Anty and husband*, the judgment by default taken against husband and wife, was set aside, upon the wife alone appearing and filing an answer. "Upon that issue," says the court, "the plaintiff went to trial, without taking the necessary steps to have the wife authorized to contest the suit, and judgment was rendered in his favor." So, in the case of *Keys* v. *Nettles*, 12 L. R. 381, the married woman filed a petition in her own name and without the assistance of her husband. In both instances, the cause was remanded to be proceeded in according to law. But here, the suit was brought in the mode required by Article 118 of the Code of Practice, which provides, "when one intends to sue a married woman, for a cause of action relative to her own separate interest, the suit must be brought both against her and her husband." Further, the service of process was made as required by Article 182 C. P., which says, "if the defendants are husband and wife—it will be sufficient to deliver one single citation and one single copy of the petition, to the person representing the defendants." The following was the language of the court in *Chiasson* v. *Duplantier*, 10 L. R. 574: "In the case of *Laws* v. *Chinn*, 4 Martin N. S. 388, this court held, that the husband and wife, being co-plaintiffs, his authorization to her clearly resulted from his joining in the suit, in which he had no other interest than to assist her in asserting her right. In the present case, she was co-defendant with her husband, and it is difficult to perceive any difference in principle between the cases. In the first, she became a party by petition; in the last, by citation and answer." This decision appears to be a case in point; the only difference in the facts being, that instead of an answer filed by the husband and wife, as in *Chiasson* v. *Duplantier*, there was in the case at bar, a tacit joinder of issue by the judgment by default taken against husband and wife. C. P. 361. This tacit or feigned issue was binding upon the wife, and dispensed with an authorization of the Judge, which only becomes necessary in the absence of an authorization, express or implied, of the husband. C. P. 118. C. C. 126, 129.

II. Upon the second point, we have considered that irregularities in the form of the judgment of partition of the nature of those charged, are the subject of appeal, rather than of the action of nullity. The judgment of the 6th of December, 1852, seems, however, to be regular. It follows the prayer of the petition; recites that experts have been appointed, who have reported that the property could not be conveniently divided in kind; and orders a sale at public auction in conformity to article 1261 of the Civil Code.

An equitable consideration against disturbing that judgment arises, also, from the conduct of the plaintiff's husband, who represented her, in relation thereto. It is proved that he assisted her in fixing the terms of the sale, and also at the sale itself. This was not merely a passive, but an active execution of the judgment, and would seem to be within the the purview of Article 612 of the Code of Practice.

III. It is objected, that some portions of the property were sold at prices

below the estimation in the inventory. But all the parties to the partition were <span style="float:right">GILMORE</span>
of full age. The absolute prohibition to sell under the price of estimation, only <span style="float:right">v.</span>
exists in the case of minors. C. C. 337. See also on this point, 11 Rob. 508. <span style="float:right">GILMORE.</span>
2d Ann. 966.

Besides, the principal item of property thus sold, the *Gilmore* plantation,
was afterwards re-sold at private sale by consent of all the parties, plaintiff
joining in the same as vendor, for a largely increased price. C. C. 1268.

There is a bill of exceptions in the record, to the exclusion of testimony
offered by plaintiff, to prove that slaves had risen in value since the sale under
the judgment of partition. Had this fact been proved, it would not have
changed our conclusion in this case, and the exclusion of the evidence is there-
fore unimportant.

Judgment affirmed.

CAMPBELL, J. As to whether, under the circumstances, the wife had capa-
city to stand in judgment.

The husband having failed to appear to assist his wife in the defence of her
suit, I think it was necessary that the plaintiff should have obtained from the
court an order authorizing her to stand in judgment.

SLIDELL, C. J. I concur with Judge Buchanan on the first point discussed
in his opinion.

My impressions are against his views on the *second point*. The proceedings
might have been held irregular on appeal. But I do not think the irregularities ·
such as to authorize an action of nullity and set aside the sale. Moreover, there
was *laches* on part of plaintiff, and no equitable reason is shown to disturb the
sale, and the concurrence of the husband increases the equity in favor of the
purchasers. 9 L. R. 79. 10 L. R. 573. 1 R. R. 523. 3 Ann. 646. 13
L. R. 431. 5 Ann. 255. 3 Ann. 664.